BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
MARK P. TAKLA
Assistant United States Attorney
Chief, Orange County Office
MELISSA S. RABBANI (Cal. Bar No. 283993)
Assistant United States Attorney
Deputy Chief, Orange County Office
     U.S. ATTORNEY'S OFFICE
     411 West Fourth Street, Suite 8000
     Santa Ana, California 92701
     Telephone: (714) 338-3500
     Facsimile: (714) 338-3561
     E-mail:    melissa.rabbani@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. SA CR 22-81-FLA |
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION AND MOTION FOR DEPARTURE PURSUANT TO U.S.S.G. § 5K1.1 |
| v. | |
| TODD AMENT, | Hearing Date:  November 14, 2025 |
| Defendant. | Hearing Time:  1:30 p.m. |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorney Melissa Rabbani, hereby files its sentencing position for defendant Todd Ament, which includes a motion for departure from the applicable Sentencing Guidelines pursuant to U.S.S.G. § 5K1.1.

The government's sentencing position and motion are based upon the attached memorandum of points and authorities, the files and

records in this case, the revised Presentence Report filed on August 15, 2025, and such further evidence and argument as the Court may wish to consider at the time of sentencing.

Dated: November 4, 2025       Respectfully submitted,

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

/s/ *Melissa S. Rabbani*
MELISSA S. RABBANI
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant Todd Ament ("defendant") is the former President and Chief Executive of the Anaheim Chamber of Commerce. Around 2019, the FBI began investigating defendant for his participation in a scheme to defraud a cannabis company ("Victim Company 1") and schemes to engage in mortgage and bank fraud. Defendant ultimately agreed to cooperate with the government, and his cooperation led to charges against one major public official: Harish "Harry" Sidhu, the former mayor of Anaheim. Earlier this year, Sidhu pled guilty to four felonies: one count of obstruction of justice, two counts of making false statements to a federal agency, and one count of wire fraud. Sidhu was sentenced to two months' custody and has already served his sentence. See United States v. Sidhu, SA CR 23-114-JWH.

In July 2022, defendant Ament pled guilty to two counts of wire fraud, one count of bank fraud, and one count of subscribing to a false tax return, based on his conduct with respect to Victim Company 1, his application for a Small Business Administration loan during the COVID-19 pandemic, his application for a mortgage loan in 2020, and his tax returns for tax years 2017 through 2019.

In his plea agreement, defendant agreed that he would pay full restitution to the victims of his crimes, including Victim Company 1, and that he would continue to cooperate with the FBI. See Dkt. 13 at 3-4, 17. In exchange, the government agreed to recommend a one-level downward variance under Section 3553(a), to bring to the Court's attention the nature and extent of defendant's cooperation, and, if appropriate, to move the Court for a 5K1.1 departure based on his substantial assistance to the government. See id. at 6-8.

The United States Probation Office ("USPO") filed a revised Presentence Report on August 15, 2025. Dkt. 78. In its report, the USPO found that the total applicable offense level in this case is 19. Id. 4. With defendant's criminal history in category I, the USPO concluded that the applicable Guidelines range in this case is 30 to 37 months. Id. The USPO also concluded that the applicable fine range under the Guidelines is $10,000 to $1,000,000.

As set forth below, the government believes that the offense level applicable to this case before any 5K1.1 motion is in fact 15, and not 19. Thus, with defendant in criminal history category I, the government believes the starting Guidelines range applicable to this case is 18 to 24 months. The government also believes that defendant has provided substantial assistance in the investigation or prosecution of another person – Harry Sidhu - and that an eight-level departure is thus warranted under U.S.S.G. § 5K1.1. With that departure, the applicable Guidelines range is zero to six months' imprisonment, and a sentence of one day is authorized under the Guidelines.

Based on defendant's cooperation, the government respectfully recommends that the Court impose a sentence of one day (time served). The government further recommends that the Court order restitution of $225,000 to Victim Company 1, impose a fine of $9,500, and order a special assessment of $400. The government believes this sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a).

**II.   SUMMARY OF RELEVANT FACTS**

The facts below are taken from the plea agreement filed on June 9, 2022. See Dkt. 13 at 13-17.

**A.   Count One (Wire Fraud)**

In 2019, defendant and a business associate of his met with Melahat Rafiei, whom this Court recently sentenced in a related case,[1] and Victim Company 1, a cannabis company and Rafiei's client. In that meeting, defendant, while serving as President and CEO of the Anaheim Chamber of Commerce ("ACC"), represented that if Victim Company 1 paid $225,000 to the ACC, the ACC would use that money to create an ACC Cannabis Task Force that would draft, and lobby for the passage of, an ordinance that would allow the retail sale of cannabis in the City of Anaheim.  In reliance on those representations, Victim Company 1 did pay $225,000 to the ACC; at least $41,000 of that money ultimately was transferred to defendant's personal bank account. Neither defendant nor anyone else ever told Victim Company 1 that at least $41,000 would go to defendant personally, and defendant's misstatements and omissions were material to the decision by Victim Company 1 to pay the ACC $225,000.

Victim Company 1 has not been reimbursed for that payment and seeks restitution of $225,000.

**B.   Count Two (Wire Fraud)**

In 2020, in the midst of the COVID-19 pandemic, defendant applied for an Economic Injury Disaster Loan from the Small Business Administration ("SBA").  In making that application, defendant represented to the SBA that he would use any loan proceeds "as working capital to alleviate economic injury cause by disaster occurring in the month of January 31, 2020 and continuing thereafter."  In fact, however, defendant intended to use any

---

[1] See United States v. Rafiei, SA CR 23-06-FLA.

3

proceeds for his own personal expenses.  After the SBA paid defendant $61,900, defendant used the money to pay for personal expenses and property taxes related to his home.

The government understands that defendant has repaid the SBA loan.

### C. Count Three (Bank Fraud)

In 2020, while applying for a home mortgage loan, defendant falsely represented to Chase Bank that three separate deposits to his account totaling $205,000 were earned income based on consulting services his consulting company had performed.  In fact, those deposits were simply a loan from an associate of defendant's and not earned income.

The government understands that defendant has repaid the mortgage loan at issue.

### D. Count Four (Subscribing to False Tax Returns)

For tax years 2017, 2018, and 2019, defendant signed and filed false tax returns that understated his income for those years, resulting in tax losses of over $200,000.

The government understands that defendant has paid the taxes owed.

### E. Cooperation

Defendant began cooperating with the government in 2021.  In or around September of that year, defendant allowed the FBI to search his personal cell phone.  Among other things, agents found text messages involving defendant and Mayor Sidhu in which Sidhu sought an out-of-state address to avoid paying certain taxes on a helicopter he was registering.  Those text messages are the basis for two of the

4

charges to which Sidhu pled guilty: one count of wire fraud and one count of making false statements to a federal agency.

Defendant also informed agents that Mayor Sidhu had sent defendant and one other person an email containing non-public information relating to the proposed sale of Angel Stadium, with the expectation that defendant would pass that information along to the Angels – with whom the City of Anaheim was actively negotiating. Defendant also provided agents with a copy of the email, which agents later discovered Sidhu had deleted from his own devices. Defendant's cooperation and information with respect to the Angel Stadium email led to the other two charges that were ultimately brought against Sidhu: one count of making false statements and one count of obstruction of justice.

Defendant also actively cooperated with the FBI, allowing consensual monitoring of his personal cell phone for several months so that the FBI could record defendant's calls with business associates and others, including Sidhu.

**III. THE PRESENTENCE REPORT**

The USPO calculates that the total offense level in this case is 19, based on a base offense level of seven, a 12-level increase based on the loss amount at issue, a two-level increase for the use of "sophisticated means," a two-level increase based on defendant's position of "public or private trust," a one-point increase based on a multiple count adjustment, a three-level decrease for acceptance of responsibility, and a final two-point reduction because of defendant's status as a zero-point offender. See Dkt. 78 at 11-14. Thus, based on a criminal history score of zero and criminal history

5

category of I, the USPO concludes that the Guidelines range applicable to this case is 30 to 37 months.

**IV.   THE GOVERNMENT'S POSITION**

As set forth above, the government believes that the total offense level in this case, before any 5K1.1 motion, should be 15.

In particular, the government agrees with the USPO that the base offense level for the three fraud counts is 7, and that a 12-point increase applies based on the loss amount. See U.S.S.G. §§ 2B1.1(a), 2B1.1(b)(1)(G). The government does not agree, however, that any increases should apply for the use of sophisticated means or any position of public or private trust.

As set forth in the notes to Sentencing Guideline 2B1.1(b)(10)(C), an adjustment for the use of "sophisticated means" applies to "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense," such as the use of "fictitious entities, corporate shells, or offshore financial accounts." Here, the government does not believe any of the fraud counts involved particularly complex or intricate offense conduct. Defendant simply asked Victim Company 1 for money, and Victim Company 1 paid it. Defendant simply lied to the SBA and Chase Bank and obtained the loans he wanted. No fictitious entities, corporate shells, or offshore accounts were used; the transactions at issue were not concealed or effected in any particularly complex or clever way.

With respect to abuse of a position of trust under U.S.S.G. § 3B1.3, the Guidelines state that the adjustment applies where defendant abused a position of trust "in a manner that significantly facilitated the commission or concealment of the offense," such as

6

"by making the detection of the offense or the defendant's responsibility for the offense more difficult."  While defendant did have a leadership position at the ACC, it is not clear that his position at the ACC significantly facilitated the commission or concealment of the offense: the misrepresentation to Victim Company 1 about where the $225,000 would go.

The government also calculates that a two-level multiple count adjustment is appropriate.  The government agrees with the USPO that the applicable offense level for the tax fraud count is 18; because the government believes that the offense level for the tax fraud count is only one level less serious than the offense level for the other fraud counts, the government submits that a two-level adjustment should apply under U.S.S.G. § 3D1.4.

The government also agrees with the USPO that defendant is entitled to a three-point reduction for acceptance of responsibility and an additional two-level decrease because he is a zero-point offender.  Finally, per the terms of the plea agreement, the government respectfully recommends that the Court apply an additional one-level variance under 18 U.S.C. § 3553(a) based on defendant's history and characteristics, including his lack of criminal history, his immediate acceptance of responsibility for the offense conduct, and his ongoing cooperation with the government.

Thus, the government believes that the total applicable offense level, before any 5K1.1 motion, is 15.  Because defendant is in criminal history category I, the government believes that the starting Guidelines range for this case is 18 to 24 months' imprisonment.

Based on defendant's substantial assistance with respect to the

7

investigation and prosecution of Harry Sidhu, the government also moves for an additional eight-level departure pursuant to U.S.S.G. § 5K1.1.

"Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." U.S.S.G. § 5K1.1. In determining the appropriate reduction, the Court may consider, among other factors, the court's evaluation of the significance and usefulness of the defendant's assistance; the truthfulness, completeness, timeliness, and reliability of any information provided by the defendant; and any injury or danger incurred by the defendant in cooperating with the government. Id. Here, all of those factors weigh in favor of a significant departure for defendant.

Immediately after he was approached by the FBI, defendant agreed to assist FBI agents in investigating public corruption and other crimes in Orange County. Based on defendant's actions, including turning over his personal cell phone and allowing the covert recording of phone calls, the government was able to obtain a search warrant for the residence of Harry Sidhu, who was then the mayor of Anaheim – and who resigned from his position almost immediately after the search warrant was executed. Sidhu ultimately pled guilty to four felonies and was sentenced earlier this year. Without defendant Ament's actions, the government likely could not have charged Sidhu, and Sidhu likely would have continued to serve as mayor of Anaheim.

Defendant's own offense conduct was serious and demonstrated a lack of respect for the law. Defendant engaged in a pattern of serious and deceptive behavior, prioritizing his own financial gain

8

over all else.  Notably, defendant took advantage of a global pandemic to line his pockets with tens of thousands of dollars of public funds – money it does not appear defendant even particularly needed.

However, once confronted by the FBI, defendant immediately accepted responsibility for his actions and agreed to cooperate with the government.  Defendant devoted a significant amount of time to his cooperation, provided information that was truthful and timely, and risked his own connections and reputation to do so.

Given the above, the government respectfully submits that an eight-level departure is appropriate here.  With that departure applied, the total offense level is 7, and with a criminal history score of I, the applicable Guidelines range is zero to six months.

The government respectfully recommends that the Court impose a sentence at the low end of that range: one day of custody (time served).  Under the particular circumstances of this case, the government submits that a non-custodial sentence, with an appropriate order of restitution and a fine, will appropriately reflect the seriousness of this offense and promote respect for the law, deter future criminal conduct from both the defendant and others without imposing greater punishment than necessary, and serve to protect the community from further crime, while minimizing sentencing disparities among similarly situated defendants.

**V.   RESTITUTION**

As set forth above, the government believes that defendant's loans from the SBA and Chase Bank, as well as his past taxes, have been paid.  However, as set forth in the plea agreement, defendant

9

should be ordered to pay restitution to Victim Company 1 in the amount of $225,000.  See Dkt. 13 at 11.[2]

## VI.  FINE

With a total offense level of seven, the applicable Guidelines range for a fine is between $1,000 and $9,500.  See U.S.S.G. 5E1.2(3).  In determining the appropriate amount of a fine, the Court is instructed to consider, among other things, defendant's ability to pay the fine and the burden a fine would place on the defendant and his or her dependents.  As noted in the PSR, defendant's assets are such that a fine in that range would constitute a minimal burden.  Based on the above factors, as well as the nature and seriousness of the offense, the government submits that a fine of $9,500, to be paid immediately, is appropriate in this case.

## VII. CONCLUSION

As set forth above, a sentence of time served, restitution of $225,000, a fine of $9,500, and a special assessment of $400 is sufficient, but not greater than necessary, to punish defendant, promote respect for the law, deter defendant from committing similar crimes in the future, and avoid sentencing disparities.  See generally 18 U.S.C. § 3553(a).

---

[2] In the plea agreement, the parties agreed that the applicable amount of restitution was $286,900.  That figure was based on the $225,000 due to Victim Company 1 and the SBA loan of $61,900.  Because that SBA loan has been repaid, the government believes the amount of restitution now due is only $225,000.